IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICH AUREL, #317239              *
          Plaintiff,
   v.                     *   CIVIL ACTION NO. ELH-14-2813

MAILROOM NORTH BRANCH    *
FRANK B. BISHOP
RICHARD E. MILLER         *
LT. JONES
ROBERT L. HARRIS          *
SCOTT C. BEEMAN
         Defendants.     *
                     *****

**MEMORANDUM**

Mich Aurel,[1] a Maryland prisoner, filed an action under 42 U.S.C. § 1983 (ECF 1),[2] which he later supplemented. ECF 10. He has sued the Mail Room of the North Branch Correctional Institution ("NBCI") as well as NBCI; former Warden Frank Bishop; former Assistant Warden Richard Miller; Lt. Calvin Jones; Sgt. Robert Harris; and C.O. II Scott Beeman.

Defendants have filed a motion for reconsideration (ECF 21) as to this Court's decision to grant in forma pauperis status to plaintiff. *See* ECF 5. In addition, defendants have filed a renewed motion to dismiss or, in the alternative, for summary judgment. ECF 22.[3] The

---

[1] The Maryland Department of Public Safety and Correctional Services ("DPSCS") lists plaintiff as Mich Aurel on its "inmate locator" website. Although plaintiff was prosecuted as Aurel Mich in the Maryland courts, I will refer to him per the DPSCS designation of Mich Aurel.

[2] All docket references refer to the Court's electronic pagination.

[3] By Order of August 26, 2015, I denied defendants' original motion to dismiss or, in the alternative, motion for summary judgment (ECF 16), without prejudice.

dispositive motion is supported by a memorandum (ECF 22-1) (collectively, the "Motion"), and several exhibits. No opposition has been filed to the Motion and the time to do so has expired.[4]

The court finds a hearing in this matter is unnecessary.  *See* Local Rule 105.6 (D. Md. 2016).   For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted.  And, I shall deny defendants' motion for reconsideration.

## I.  Factual Background

Aurel, who is self-represented, is incarcerated at NBCI in Cumberland, Maryland.   He states that he is an indigent inmate hailing from Romania.

Aurel claims that in April 2014, the NBCI mailroom refused to send outgoing mail to family and friends in Romania and Spain, to officials in the Department of Justice of Romania, to the President of Romania, and to the Romanian television media.   ECF 1 at 3.   Further, Aurel alleges that from April 20, 2014 to August 23, 2014, the NBCI mailroom refused to send all of his mail due to insufficient funds by "destroying" it.   He asserts that he is being denied mail, and telephone contact with family and friends and that he has been subject to "harassment," "manipulation," "mental abuse," and "discrimination" by all NBCI staff on the basis of his race. Aurel seeks $30,000,000.00 in damages.  *Id.*

Aurel filed a separate 42 U.S.C. § 1983 complaint on September 23, 2014, which has been construed as a supplemental complaint to this original action.  *See* ECF 10.   In the

---

[4] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on October 27, 2015, Aurel was notified that defendants had filed a dispositive motion, the granting of which could result in the dismissal of his case.  ECF 23.   He was informed that he was entitled to file an opposition within seventeen days, and that his failure to file a responsive pleading could result in the dismissal of his case or in the entry of judgment against him, without further notice of the court.  *Id.*

supplemental complaint,[5] Aurel alleged that on July 1, 2014,  NCBI property officers refused to mail his property to his family in Romania.  ECF 10 at 3.  He sought the award of $5,000.00 in damages.  *Id.*

Defendants assert that Aurel filed ninety-six administrative remedy procedure ("ARP") grievances between December 2, 2013 and October 6, 2015, of which ten related to Aurel's alleged inability to communicate by either telephone or mail.  ECF 22-3 at 2-6.  None of those ARPs were found meritorious.  *Id.*  Defendants further assert that Aurel appealed one of those ARPs to the Commissioner of Correction, who found it to be without merit.  ECF 22-4, Declaration of Christina Ripps.

In addition, defendants maintain that Aurel filed an ARP, alleging that Lieutenant Whitacre threatened, harassed, and mentally abused him.  ECF No. 22-3 at 4.  It was dismissed for procedural reasons because Aurel failed to resubmit the ARP to specify how he was threatened and to provide examples of how he was mentally abused and harassed.  *Id.*

On July 1, 2014, Aurel was called to the NBCI property room to make a disposition of personal property that was confiscated as either contraband or excessive according to Division of Correction directives.  ECF 22-5, Declaration of Sgt. Robert Harris.  He chose to destroy various personal items (primarily clothing, linens, hygiene items, and paint) and to mail a bracelet, class ring, and key chain to Romania.  The items designated for disposition were placed in a dumpster and destroyed that day.  ECF 22-7, Declaration of Scott Beeman.  As requested by Aurel, several

---

[5] The § 1983 complaint, instituted as *Aurel v. NBCI Property Officer, et al.*, Civil Action No. ELH-14-3036 (D. Md.), also alleged that NBCI property officers had destroyed Aurel's personal property, including assorted clothes and linens.  That component of the complaint was dismissed with prejudice, while the outgoing mail element was dismissed, without prejudice and treated as a supplemental complaint to the instant action.  Correctional Officers Jones, Harris, and Beeman were added as defendants to this complaint.

items were mailed to Romania on July 2, 2014.  ECF 22-5, Harris Decl.; ECF 22-6, Declaration of J. Gary Sindy, and attachments.  Two days later, on July 4, 2014, Aurel wrote a letter to NBCI's Assistant Warden, Richard Miller, indicating that he now wished to mail the items that he had selected for construction.  ECF 22-5 at 1.  On July 10, 2014, Harris spoke with Aurel and explained that, with Aurel's consent, the items had been destroyed and thus were not available for mailing.  *Id*.  Defendant Jones, the supervisor of the NBCI property room, avers that, to the best of his knowledge, all NBCI property room  personnel followed Department of Public Safety and Correctional Service's policies and procedures.  ECF 22-8, Declaration of Calvin Jones.

Defendants further claim that throughout 2014, Aurel sent and received multiple pieces of mail.  ECF 22-9 at 1-10, Declaration of Mary Jane Rose, and attachments.  Packages were sent on at least eight different occasions between April 23, 2014 and August 23, 2014, including the mailing on July 2, 2014, of Aurel's class ring, silver bracelet, and key chain to Romania. ECF 22-6 at 2-3.

An officer with the NBCI Intelligence Department (which deals with inmate telephone calls) avers that Aurel "has access to the inmate phone system."  ECF 22-10, Declaration of David Barnhart.  Aurel made one phone call between January 2014 and the date of the Barnhart Declaration, October 20, 2015, and it "looked like an international number."  *Id.*

The former and current Executive Directors for the Inmate Grievance Office ("IGO") maintain that Aurel has filed a number of IGO grievances, several of which are relevant to the claims raised in this case.  ECF 22-11, Declaration of Scott Oakley, dated January 16, 2015; ECF 22-12, Declaration of Russell Neverdon, Sr., dated Oct. 6. 2015.  Defendants argue that Aurel did not properly exhaust his administrative grievances with the Inmate Grievance Office as to the issues raised in his § 1983 complaint.

The first grievance, IGO No. 20140858, was filed on April 18, 2014, as an appeal from the disposition of ARP-NBCI-0862-14, in which Aurel complained about the performance of his case manager, Mr. Herbolt.   ECF 22-11 at 1.   Aurel alleged that his case manager denied him emergency contact with the Romanian Ambassador in the District of Columbia.   ECF 22-12, Neverdon Decl., at 2.   The IGO dismissed this appeal on June 17, 2014, because Aurel failed to properly exhaust the ARP process.   *Id.*; *see also* ECF 22-11 at 2.

Also on April 18, 2014, Aurel filed IGO No. 20140859, as an appeal from ARP-NBCI-1057-14, in which Aurel complained that correctional officers denied him ARP forms.   ECF 22-11 at 2.   The grievance was administratively dismissed on June 17, 2014, for failure to exhaust.   *Id.*

On September 4, 2014, Aurel filed IGO No. 20141909, as an appeal of ARP-NBCI-2037-14.   He alleged that Property Officer Harris refused to mail certain personal property to someone to Romania.   *See* ECF 22-11 at 2; ECF 22-12 at 2.   This grievance was administratively dismissed by the IGO on January 9, 2015, due to Aurel's failure to properly exhaust the ARP process.   ECF 22-11 at 2; ECF 22-12 at 2.

Aurel filed IGO No. 20142216 on October 14, 2013.   It was an appeal of ARP-NBCI-2496-14, in which Aurel alleged that the NBCI mailroom staff were not sending Aurel's outgoing mail addressed out of country, at the State's expense, although Aurel lacked sufficient funds.   ECF 22-11 at 3.   This grievance was pending as of October 2015. *See*  ECF 22-11 at 3.   But, it has since been dismissed.   ECF 22-12 at 2.

## II.  Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.   ECF 12. A motion styled in this

manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Generally, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). But, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[6]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the

---

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see Putney v. Likin*, ____ F.3d ____, No. 14-3882, slip op. at 13 (4th Cir. July 14, 2016). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d). *See Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp.

2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit …is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted); *see also Putney*, slip op. at 14; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted).  Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, slip op. at 14.

Aurel has not filed an affidavit under Rule 56(d).  In light of the foregoing, I am satisfied that it is appropriate to address the defendants' motion as one for summary judgment, because this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not

appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Aurel is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## III.  Discussion

### A. Exhaustion of Administrative Remedies

Defendants argue that Aurel's claim must be dismissed because he has failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act  provides, in pertinent part:

> (a) Applicability of administrative remedies

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir. 2004).[7]

---

[7] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219; *see Moore*, 517 F. 3d at 725 (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette,* 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch,* 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, ____ U.S. ____, 136 S. Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855.

The Fourth Circuit has addressed the meaning of "available" remedies in *Moore v. Bennette,* 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

More recently, the Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S.

Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).   Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit.   *See Chase v. Peay*, 286 F. Supp. 2d at 529-30.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play."   136 S. Ct. at 1859.   These are when the remedy operates as a "simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" the administrative scheme might be so "opaque" as to become "practically speaking, incapable of use;" and prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."   *Id.* at 1859-60.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" available to Maryland State prisoners for "inmate complaint resolution."   Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against…official[s] or employee[s] of the Division of Correction." Md. Code (2008 Repl. Vol.), Correctional Services Article ("C.S."), § 10-206(a); *see generally* C.S. §§ 10-201 *et seq*.   It falls within 42 U.S.C. § 1997e(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC]…against any officials or employees of the [DOC]…arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8).   An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; DCD 185-002 (effective August 27, 2008).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

To pursue a grievance, a prisoner confined in a DOC facility may file with the Inmate Grievance Office ("IGO") a grievance against any DOC official or employee. C.S. § 10-206(b). However, if the DOC institution has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b); *see also* OPS.185.0002.02.[8] And, DPSCS has established an administrative remedy procedure process that applies to DOC facilities. OPS.185.0002.02.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official." OPS.185.0002.05C(1). Correctional Services Article, § 1-101(k) defines a managing official "as the administrator,

---

[8] OPS.185.0002 is an Executive Directive created by the Maryland Department of Public Safety and Correctional Services, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive"). The ARP Directive was submitted as a defense exhibit in *Payton v. Bishop*, ELH-15-3648, ECF 16-2. Effective August 14, 2015, the ARP Directive establishes the "policy and procedures for an Administrative Remedy Procedure (ARP) . . . to provide a method for resolving an inmate complaint related to <u>specific</u> conditions of confinement." *Id.* Similarly, DCD #185-003 and DCD #185-004 were submitted as exhibits in ELH-15-3645, at ECF 16-3 and 16-4, respectively. All of these exhibits are subject to judicial notice.

"[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 115 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). In particular, pursuant to Fed. R. Evid. 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute," in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990), the Court recognized that a district court may "properly take judicial notice of its own records."

director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DOC, each facility's warden is responsible for the administrative remedy procedure at the institutional level. DCD # 185-003VI. Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. In that circumstance, the prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operation's ("DSO") or that official's designee. OPS.185.0002.05C(2). For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. DCD # 185-004VI. As noted, this is the second step in the ARP process.

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B; *see also* DCD 185-002, § VI(N)(1). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.

An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary

by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code, Title 10 of the State Government Article.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210.  But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See*, *e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

The ARP process applies to the majority of inmate complaints.  However, it does not apply to case management decisions, which are to be directly grieved to the IGO. OPS.185.0002.05F(1). Nor does it apply to Maryland Parole Commission procedures and decisions to withhold mail, or Prison Rape Elimination Act related claims. OPS.185.0002.05F(2),(4),(5).   Those categories of complaints are addressed through separate administrative processes. *Id.*

Finally, the ARP process does not apply to complaints relating to prisoner disciplinary procedures and decisions. OPS.185.0002.05C(3). If a prisoner is found guilty of a rule violation, the prisoner is entitled to appeal the hearing officer's guilty decision or sanction to the warden of the facility where he or she is incarcerated. COMAR 12.02.27.33(A)(1),(2). If the prisoner does not file a written appeal with the warden within fifteen days of receipt of the hearing officer's decision, he or she is considered to have waived the right to appeal. *Id.*, COMAR 12.02.27.33(A)(3). If the warden affirms the hearing officer's guilty finding or sanction, the prisoner may then appeal to the IGO. COMAR 12.02.27.33(D); *see also* COMAR 12.07.01.05 and .06C. When filing this appeal with the IGO, the prisoner is required to include a copy of the initial notice of inmate rule violation, the hearing record, the appeal to the warden, and the warden's response to the appeal. COMAR 12.07.01.04(B)(9)(b).

While a prisoner may pursue the ARP process to allege that correctional officers used excessive force, such ARPs may be procedurally dismissed if the Internal Investigations Division ("IID") has decided to conduct an investigation into the use of force incident at issue in the ARP. OPS.185.0002.05.E(6) & K(3)(e). If this procedural dismissal indicates that no further action may be taken through the ARP process, a prisoner may then file a grievance directly with the IGO, as there would be no further administrative remedies available through the ARP process. G.S. § 10-206(b).

Prior to filing this suit, the IGO dismissed Aurel's appeal, in which he alleged that his case manager had denied him the ability to call his Ambassador. However, defendants claim that because plaintiff did not properly pursue the ARP process below as to that issue, "he prevented the IGO from being able to make an administrative determination on the merits." ECF 22-1 at

12.  Therefore, he failed to properly exhaust his administrative remedies, as required by the PLRA.

Moreover, the IGO had not made a decision concerning some of Aurel's other claims when Aurel filed his initial Complaint on September 4, 2014.  Nor had the IGO made a determination before plaintiff field his Supplemental Complaint on September 23, 2014.  Thus, at the relevant time, Aurel had failed to pursue those claims through all levels of available review.

Aurel fails to refute the uncontroverted record, which shows that he filed over 90 ARPs during 2013-2015, several of which concerned his claims that NBCI personnel denied him telephone calls to relatives overseas and to the Romanian Ambassador and refused to mail his confiscated property out of the prison, and that he did not fully exhaust his grievances to the IGO.  As such, the allegations raised in this complaint may not proceed, as Aurel has plainly failed to exhaust administrative remedies as to those issues.

Even if Aurel had exhausted his claims, a review of the merits of the claims against the defendants shows that Aurel has failed to articulate any colorable constitutional claim.  I turn to the merits.

### B. Claim Against Defendant Mail Room North Branch

NBCI contends that it is not "a person" within the meaning of 42 U.S.C. § 1983.  ECF 22-1 at 8.  It also contends that, under the Eleventh Amendment, NBCI has immunity from suit, as it is an arm of the State of Maryland.  *Id.*  I agree with both contentions.

Mich filed suit pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law.  Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal

rights elsewhere conferred.' " *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 707 (1999).

Title 42 U.S.C. § 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Claims under § 1983 are directed at "persons"—a jail, prison facility, or prison mailroom is not a "person" amenable to suit under § 1983.  *See Austin v. Mail Room [at] Halawa Correctional facility, et al.*, 2011 WL 6012159, citing  *Allison v. California Adult Auth.,* 419 F.2d 822, 823 (9th Cir. 1969).

In addition, NBCI and its mail room are is part of Maryland's penal system.  The State of Maryland has not waived its immunity to suit in federal court under the Eleventh Amendment.  *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984); *see also* Md. Code, § 12-201(a) of the State Government Article.

To the extent that Aurel alleges federal constitutional violations under § 1983 against NBCI and NBCI's mailroom, his claims are dismissed.

## C.  Claim Against Defendants Bishop and Miller.

Aurel names former NBCI Warden Bishop and former NBCI Assistant Warden Miller as defendants but at no point discusses precisely how they were personally involved in the alleged deprivations associated with his mail and telephone calls.  Under § 1983, individual liability

must be based on personal conduct.  *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985);

*see also Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997).   Further, absent subjective

knowledge, a prison official is not liable.  *Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *see*

*Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998).

Under *Shaw v. Stroud,* 13 F.3d 791 (4th Cir. 1994), supervisory liability may attach to a

prison administrator under § 1983 if a plaintiff can establish three elements. These are: (1) "that

the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct

that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the

plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show

'deliberate indifference to or tacit authorization of the alleged offensive practices' "; and (3) "that

there was an 'affirmative causal link' between the supervisor's inaction and the particular

constitutional injury suffered by the plaintiff."  *Id.* at 799 (citations omitted).   Under the first

prong of *Shaw,* the conduct engaged in by the supervisor's subordinates must be "pervasive,"

meaning that the "conduct is widespread, or at least has been used on several different

occasions." *Id.*  Aurel has not made such a showing here.

### D.  Claim Against Defendants Harris, Jones, and Beeman

Aurel complains that on July 1, 2014, these correctional officers refused to mail his

personal property to his family overseas.  He has failed to refute the exhibits and declarations

that show that soon after July 1, 2014, his personal property was disposed of pursuant to Aurel's

own requests: certain items were mailed to Romania, while other items (primarily clothing and

linens) were destroyed. Aurel has failed to show, much less argue, that his constitutional rights were violated.[9]

### E.  Motion to Reconsider

Finally, as noted, defendants have also filed a motion to reconsider this court's decision to grant Aurel's indigency motion.  ECF 21.  It is beyond question that Aurel has had three cases dismissed under 28 U.S.C. § 1915(e). *See Mich v. Nice, et al*., Civil Action No. JKB-14-1397 (D. Md.); *Aurel v. Gainer, et al.*, ELH-15-1750 (D. Md.); and *Aurel v. Jones, et al.*, ELH-15-1928 (D. Md.). Nevertheless, I shall deny the motion to reconsider and shall dismiss the case for the reasons set forth above.

A separate Order follows.


Date:  July 21, 2016                                    _____/s/_____
                                                       Ellen L. Hollander
                                                       United States District Judge

---

[9]  Given the absence of a constitutional deprivation, the court sees no need to address defendants' qualified immunity argument.